# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**PATRICK MILLER**,

Plaintiff,

- v -

Civ. No. 9:12-CV-972<br/>(LEK/RFT)

**EDWARD CARNEY**, *Deputy*, **JUSTIN CAMPEAU**, *Deputy*, **BRIAN WILLIS**,[1] *Deputy*, **JAMES PRIOR**, *Deputy*, **ELLA BROWN**, *Deputy*,

Defendants.

**APPEARANCES:**                                     **OF COUNSEL:**

**PATRICK MILLER**
Plaintiff, *Pro Se*
11-B-0856
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

**FRANK W. MILLER, ESQ.**
**BRYAN N. GEORGIADY, ESQ.**
Office of Frank W. Miller
Attorney for Defendants
6575 Kirkville Road
East Syracuse, NY 13057

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Patrick Miller brings this Complaint, pursuant to 42 U.S.C. § 1983, alleging

that he was falsely arrested and maliciously prosecuted by Defendants.  Dkt. Nos. 1, Compl.; & 11,

---

[1] Defendant Brian Wills's name is incorrectly listed on the Docket Report as "Willis."  The Court will use the proper spelling when referring to this Defendant.  *See* Dkt. No. 43-6, Brian Wills Aff., dated Sept. 26, 2013.

Supp. Submission in Support of Compl. (hereinafter "Supp. Compl.").[2] Defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 43. Plaintiff has not opposed the Motion.[3] For the reasons that follow, we recommend that Defendants' Motion be **GRANTED** and that this case be **DISMISSED.**

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

---

[2] Plaintiff's Complaint was initially dismissed with leave to re-plead for failure to state a claim. Dkt. No. 9, Dec. & Order, dated Dec. 7, 2012. Although Plaintiff submitted a document entitled "Amended Complaint," the two-page document failed to comply with even the most basic rules for such a pleading; nonetheless, given his *pro se* status, the Court deemed the document to be a Supplemental Submission in Support of his Complaint, and construing the two documents liberally, found that Plaintiff had alleged sufficient information to warrant a response from Defendants with respect to his malicious prosecution and false arrest claims. Dkt. No. 12, Dec. & Order, dated Feb. 13, 2013.

[3] Despite receiving Notice from the Clerk of the Court and the Defendants as to the consequences of failing to respond to a motion for summary judgment, Plaintiff failed to do so. *See* Dkt. Nos. 43-9 & 45.

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

In the instant matter, Plaintiff has failed to oppose Defendants' Motion.[4]  However, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to a judgment as a matter of law.  *Id.*; FED. R. CIV. P. 56(e). Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on a court to conduct an independent review of the record to find proof of a factual dispute.  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).

## II. DISCUSSION

### A.  Summary of Facts

The following facts are undisputed.[5]

On May 14, 2010, at approximately 2:21 a.m., the Oswego County Sheriff's Office ("Sheriff's Office") began receiving reports that an assault with a weapon had occurred at building number 32 of the Birch Lane Apartments in the Town of Scriba, New York.  Dkt. No. 43-1, Defs.' Statement of Material Facts Pursuant to Local Rule 7.1(a)(3) (hereinafter "Defs.' 7.1 Statement"), at ¶ 1.  The dispatcher requested that vehicle units respond to an incident involving a stabbing and injuries at the scene.  *Id.* at ¶ 2.  The first officers to arrive at the scene were Defendant James Prior, a deputy with the Sheriff's Office, and Officers Finkle and Kedenburg of the New York State

---

[4] *See supra* Note 3.

[5] Although Plaintiff failed to respond to Defendants' Motion for Summary Judgment, a liberal reading of his Complaint and Supplemental Complaint reveal that the facts of the instant case are nonetheless undisputed.  *Compare* Dkt. No. 43-1, Defs.' Statement of Material Facts Pursuant to Local Rule 7.1(a)(3), *with* Compl. & Supp. Compl. Accordingly, the following facts are construed from the submissions of both parties.

Police.[6] *Id.* at ¶ 4. Upon arriving at the scene, the officers encountered a crowd of people, members of which told the officers that there was a man in apartment 32B who had been throwing knives, and there was an injured woman with a knife in her arm in one of the adjacent buildings. *Id.* at ¶¶ 5–6.

A significant amount of blood was visible on the sidewalk area near the entrance to apartment 32B; the lights in the apartment were on and its door was ajar. *Id.* at ¶ 7. Deputy Prior and Officers Kedenburg and Finkle drew their weapons and made a tactical entry through the front door. *Id.* at ¶ 8. Moments later, Defendant Deputy Sheriff Justin Campeau, arrived on scene and entered apartment 32B. *Id.* at ¶ 9. Once inside, the officers fanned out and began to search the apartment for victims or suspects. *Id.* at ¶ 10. Defendant Deputy Sheriff Edward Carney, who arrived not long after Defendant Campeau, took up a position outside the rear door of apartment 32B. *Id.* at ¶ 11. Trooper Kedenburg located Plaintiff hiding inside a bedroom closet, handcuffed him for their safety, and led him to the living room where he was asked to sit down. *Id.* at ¶¶ 12–13 & 15.

After the apartment had been cleared, Deputy Carney returned to the front of the building. Deputy Prior and Trooper Kedenburg then left apartment 32B in search of the injured victim. *Id.* at ¶¶ 14 & 16. Near the front door to apartment 32B, Deputy Prior noticed additional blood spatter on the outside wall of the building and a trail of blood drops on the ground leading from building number 32 to building number 33. *Id.* at ¶ 17. Trooper Kedenburg and Deputy Prior located the victim, Colbi Fantom, in the stairway of building number 33; Fantom had a foot-long knife embedded into her upper arm and was bleeding profusely. *Id.* at ¶ 18–19. Fantom, conscious and coherent despite her injuries, told Deputy Prior that Pat Miller threw the knife that was embedded

---

[6] Officers Finkle and Kedenburg are not Defendants in this action.

in her arm.  *Id.* at ¶ 19–20.  Trooper Kedenburg and Deputy Prior returned to apartment 32B, and asked Plaintiff to identify himself; Plaintiff then admitted that his name was Patrick Miller.  *Id.* at ¶ 21.  Defendant Prior placed Plaintiff under arrest and Trooper Finkle read Plaintiff his Miranda rights.  *Id.* at ¶¶ 22–23.  Upon further investigation, Defendant Prior noticed that there were several knives similar to the one found in Fantom's arm in the kitchen of apartment 32B.  *Id.* at ¶ 24. Thereafter, Deputy Prior transported Plaintiff to the Oswego County Public Safety Center ("PSC"). *Id.* at ¶ 25.

At approximately 2:42 a.m., Defendant Campeau took a statement from Shane Merrit, an eye witness.  *Id.* at ¶ 27; Dkt. No. 43-3, James Prior Aff., dated Sept. 4, 2013, at ¶ 53 & Ex. E.  At approximately 3:18 a.m., Trooper Kedenburg took a statement from Teresa M. Finch, the primary resident of apartment 32B and Plaintiff's girlfriend.  Prior Aff. at ¶ 53 & Ex. D.  At approximately 5:06 a.m., Defendant Carney took an eyewitness statement from Tyler Purchase.  *Id.* at ¶ 53 & Ex. F; Defs.' 7.1 Statement at ¶ 29.

At approximately 3:30 a.m., Defendant Ella Brown, an Investigator with the Sheriff's Office, arrived to collect evidence and document the crime scene.  Defs.' 7.1 Statement at ¶ 26.  Defendant Sergeant Brian Wills, also with the Sheriff's Office, drove to University Hospital in Syracuse to get Fantom's statement and retrieve the knife from her arm for evidence.  *Id.* at ¶ 30.

At PSC, and while processing Plaintiff, Defendant Prior emptied Plaintiff's pockets and discovered*, inter alia*, a substance which was later confirmed by a field regent test to be illicit psilocybin mushrooms, a controlled substance.  Plaintiff admitted that the mushrooms belonged to him and that he had purchased them.  *Id.* at ¶¶ 32–35.  Plaintiff was re-Mirandized, and asked to give a statement about what happened that evening.  At approximately 3:29 a.m., a written statement was

*-6-*

prepared and reviewed by Plaintiff; after being given the opportunity to make edits, Plaintiff initialed all the legal releases and signed the statement under penalty of perjury. *Id.* at ¶ 36; Prior Aff. at ¶¶ 44–45 & 47 & Ex. B.

Later that same morning, Deputy Prior received and reviewed eyewitness statements from Teresa M. Finch, Tyler M. Purchase, and Shane M. Merritt. Defs.' 7.1 Statement at ¶ 37. After reviewing these statements, Defendant Prior prepared three charges against Plaintiff: (1) Felony Assault in the Second Degree, pursuant to N.Y. PENAL L. (hereinafter "PL") § 120.05; (2) misdemeanor Reckless Endangerment in the Second Degree, pursuant to PL § 120.20; and, (3) misdemeanor Criminal Possession of a Controlled Substance in the Seventh Degree, pursuant to PL § 220.03. *Id.* at ¶ 38; Prior Aff. at ¶ 54 & Ex. G.

Subsequently,[7] the Oswego County Grand Jury ("Grand Jury") indicted Plaintiff on six counts, including Assault in the Second Degree. Defs.' 7.1 Statement at ¶ 43. At a suppression hearing before the Oswego County Court, it was determined that Kedenburg, Finkle, and Prior unlawfully entered apartment 32B without a warrant and all of the evidence obtained from Plaintiff subsequent to the entry was deemed inadmissable. At trial, Plaintiff was convicted of Criminal Possession of a Weapon in the Third Degree. *Id.* at ¶¶ 44–45; Pl.'s Supp. Compl.

Plaintiff alleges that he threw the knives in self defense because a group of people were trying to burglarize his girlfriend's apartment. *See generally* Compl.; Supp. Compl.[8]

## B. Personal Involvement

Plaintiff alleges that he was falsely arrested and maliciously prosecuted. *See generally*

---

[7] The precise date is unclear.

[8] Defendants do not dispute that Plaintiff claimed to have acted in self defense. Dkt. No. 43-3, James Prior Aff., dated Sept. 4, 2013, at ¶ 46 & Exs. D & E.

Compl. Defendants argue that Brown, Wills, Carney, and Campeau were not personally involved in either arresting or prosecuting Plaintiff. Dkt. No. 43-2, Defs.' Mem. of Law at pp. 2–5.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

It is undisputed that Defendant Brown did not arrive on the scene until after Plaintiff had already been arrested and transported to the PSC. Prior Aff. at ¶ 59; Dkt. No. 43-7, Ella Brown Aff., dated Aug. 17, 2013, at p. 2; Dkt. No. 43-5, Edward Carney Aff., dated, Sept. 4, 2013, at ¶ 12. Additionally, it is undisputed that Defendant Wills's involvement was limited to driving to the hospital to take a statement from Colbi Fantom, and that he was not present when Plaintiff was arrested. Prior Aff. at ¶ 58; Dkt. No. 43-6, Brian Wills Aff., dated Sept. 26, 2013, at ¶¶ 3–7 & 19–20. Moreover, although Defendant Carney was present at the scene, his involvement was limited to securing the back entrance, monitoring the crowd in front of the building, and taking an eyewitness's statement. Prior Aff. at ¶ 61; Carney Aff. at ¶¶ 1–18. Likewise, although Defendant Campeau participated in "sweeping" apartment 32B, he was outside when Plaintiff was found by Trooper Finkle hiding in the closet, and he did not interact with Plaintiff at any time nor was he present when Defendant Prior placed Plaintiff under arrest. Prior Aff. at ¶ 60; Dkt. No. 43-4, Justin

Campeau Aff., dated Aug. 15, 2013, at ¶¶ 4–12 & 17–20. Thus, no rational juror could conclude that these Defendants were personally involved in Plaintiff's arrest. *See Munoz v. City of New York*, 2008 WL 464236, at *5 (S.D.N.Y. Feb. 20, 2008) (finding that officer who was "waiting around the apartment" but did not physically contact plaintiff, was not personally involved in his alleged false arrest); *Minott v. Duffy*, 2014 WL 1386583, at *11 (S.D.N.Y. Apr. 8, 2014) (finding that officers who were not present at the scene at the time of arrest, or when suspect was actually taken into custody, were entitled to summary judgment on grounds of lack of personal involvement in arrest); *Minter v. Cnty. of Westchester*, 2011 WL 856269, at *7 (S.D.N.Y. Jan. 20, 2011) (officers' presence outside of home insufficient to establish personal involvement for purposes of false arrest claim).

Furthermore, it is also undisputed that Defendant Prior was the only law enforcement officer involved in prosecuting Plaintiff. Defendant Prior decided which crimes to charge Plaintiff with and personally filled out and signed the criminal charging instruments. Prior Aff. at ¶ 54 & Ex. G. In contrast, aside from collecting evidence, taking statements from eyewitnesses, and giving narrative accounts for the Sheriff's internal incident report, Defendants Wills, Brown, Campeau, and Carney had no involvement in the decision to bring charges nor the actual prosecution of Plaintiff. *Id.* at ¶¶ 57–61 & Ex. I; Wills Aff. at ¶¶ 3 &19–22; Brown Aff. at p. 2; Carney Aff. at ¶¶ 13 & 16–19; Campeau Aff. at ¶¶ 12–21; *see also Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (citing cases for the proposition that law enforcement officers are personally involved in prosecuting suspects where they bring formal charges, or have the suspect arraigned, fill out complaining or corroborating affidavits, or swear or sign felony complaints) (citations omitted); *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 458 (S.D.N.Y. 2009) ("None of the defendants participated in the plaintiff's arrest. None of the defendants brought formal charges against the

plaintiff or had him arraigned. None of the defendants filled out complaining or corroborating affidavits, swore to any felony complaint, or forwarded any information to prosecutors in any way. On these grounds alone, the malicious prosecution claims against all of the defendants fail.").

Accordingly, given that Defendants Brown, Wills, Carney, and Campeau were not personally involved in Plaintiff's arrest or prosecution, we recommend that Defendants' Motion be **GRANTED** with respect to all of Plaintiff's claims against these Defendants.

### C. False Arrest

A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).[9] Under New York law, to prevail on a false arrest claim, a plaintiff must show (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. Ct. App. 1975). The quintessential justification, or defense, to false arrest is the presence of probable cause. *Weyant v. Okst*, 101 F.3d at 852 (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (noting that the existence of probable cause "is a complete defense to an action for false arrest")). Essentially, the presence of probable cause proclaims that the arrest and confinement were privileged. In order for probable cause to exist for an arrest, the arresting officers must

have knowledge or reasonably trustworthy information of facts and circumstances

---

[9] The terms false arrest and false imprisonment are always stated in tandem, yet they are not distinct causes of action but rather, false arrest is only a species of false imprisonment. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Because they are corollaries of each other, the nomenclature can be, and often are, employed interchangeably. Nonetheless this species of action is rather distinct from another common law cause of action, malicious prosecution, which is often concurrently invoked in these types of lawsuits. *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (N.Y. Ct. App. 1975).

> that are sufficient to warrant a person of reasonable caution in the belief that the
> person to be arrested has committed or is committing a crime. [citations omitted] .
> . . [Therefore] [a] district court must look to the 'totality of the circumstances.'
> [citation omitted].  In looking to the totality of the circumstances, courts must be
> aware that 'probable cause is a fluid concept – turning on the assessment of
> probabilities in particular factual contexts– not ready, or even usefully, reduced to
> a neat set of legal rules.'

*Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (citations omitted).

In essence, probable cause is determined by the facts available to the officers at the time of the arrest

and immediately before.  *Id.*; *see also Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

Furthermore, "the probable cause inquiry is based upon whether the facts known by the arresting

officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439

F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Maliha v.*

*Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008) (noting that probable cause is an objective test).

Defendants contend that Plaintiff's false arrest claim is subject to dismissal based on the fact

that Defendant Prior had sufficient probable cause to arrest Plaintiff.  Defs.' Mem. of Law at pp.

6–8.  Because we agree, we need not analyze any of the other factors of Plaintiff's false arrest claim.

It is undisputed that prior to placing Plaintiff under arrest, Defendant Prior: (1) had received

a dispatch alerting him to the fact that an assault/stabbing had occurred at the Birch Lane

Apartments, Prior Aff. at ¶¶ 5–6; (2) was told by unidentified members of a crowd outside of the

apartment building that "there was a man in Apartment #32B, . . . who had been throwing knives"

and that "there was an injured woman in one of the adjacent buildings with a knife in her arm[,]"

*id.* at ¶¶ 10–11; (3) noticed "a significant amount of blood on the sidewalk area near the entrance

to Apartment #32B[,]" *id.* at ¶ 12; (4) had found Plaintiff hiding in a closet in apartment 32B; *id.* at

¶¶ 13–17; (5) noticed a blood splatter on the wall near apartment number 32B, as well as a

noticeable trail of blood leading from building number 32 to building number 33; *id.* at ¶¶ 23–24; (6) located Colbi Fantom, in the stairwell of building number 33, sitting in a pool of her own blood with a foot-long knife embedded in her arm, *id.* at ¶¶ 25 & 28; (7) was told by Fantom that "Pat Miller" threw the knife at her, *id.* at ¶ 29; and, (8) had received confirmation from Plaintiff that he was Patrick Miller, *id.* at ¶ 31.

Therefore, we conclude as a matter of law, that based on the totality of the circumstances, Defendant Prior had sufficient information to believe that Plaintiff committed a crime.  *See Weyant v. Okst*, 101 F.3d at 852 (citing cases for the proposition that "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers").[10]

Moreover, to the extent that Plaintiff alleges he acted in self defense, *see generally* Compl. *and*  Supp. Compl, Defendant Prior "was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan,* 443 U.S. 137, 145–46 (1979), *and Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989)); *see also Jaegly v. Couch*, 439 F.3d at 153 (citing *Caldarola v. Calabrese,* 298 F.3d at 167–68 (for the same proposition).

Likewise, our conclusion in this regard is not affected by the fact that Plaintiff's statements to police were ultimately suppressed, as fruits of the poisonous tree, as a result of what was

---

[10] Indeed, during a subsequent suppression hearing, the County Court agreed that at the time of his arrest, Defendant Prior had sufficient probable cause to believe that a crime had been committed.  Dkt. No. 43-8, Bryan Georgiady, Esq. Decl., dated Sept. 27, 2013, at Ex. B, Dec. & Order, dated Oct. 12, 2010, at p. 9.

subsequently determined to be an unlawful warrantless entry of apartment 32B. Here, the Oswego County Court Judge found that there were no exigent circumstances that would have justified a warrantless entry. *See* Dkt. No. 43-8, Bryan Georgiady, Esq. Decl., dated Sept. 27, 2013, at Ex. B. Yet, "[t]he fruit of the poisonous tree doctrine is inapplicable to civil actions arising under § 1983" and the fact that evidence which served the basis for an arrest is later suppressed does not, for purposes of a § 1983 claim, eviscerate the validity of the officer's decision based on his awareness of that evidence at the time of arrest. *Hinds v. City of New York*, 768 F. Supp. 2d 512, 514 n.1 (S.D.N.Y. 2010) (citing *Townes v. City of New York,* 176 F.3d 138, 145, 149 (2d Cir. 1999)).

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's false arrest claim against Defendant Prior. *See Weyant v. Okst*, 101 F.3d at 852.

### D. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* at 161. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Id.* at 161–62 (quoting *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003)).

Here, Defendants argue that Defendant Prior had probable cause to file charges against

Plaintiff. Defs.' Mem. of Law at pp. 8–9 & 16. Because we agree, we do not analyze any of the other factors of Plaintiff's malicious prosecution claim.

In the context of malicious prosecution, probable cause exists where a police officer is aware of "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Lenhard v. Dinallo*, 2011 WL 4592804, at *7 (N.D.N.Y. Sept. 30, 2011) (quoting *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003)). Furthermore, "'[t]he existence of probable cause must be determined as of the time the prosecution was initiated . . . on the basis of the facts then known to the defendant or which he reasonably believed from appearances to be true.'" *Id.* (quoting *Loeb v. Teitelbaum,* 432 N.Y.S.2d 487, 494–95 (N.Y. App. Div. 2d Dep't 1980). And, finally, courts may determine whether probable cause existed as a matter of law where "'there is no dispute as to the pertinent events and the knowledge of the officers.'" *Id.* (quoting *Weyant v. Okst,* 101 F.3d at 852).

We agree that, as a matter of law, Defendant Prior had probable cause to initiate charges against Plaintiff. The undisputed facts establish that in addition to the evidence described above, *see supra* Part II.C, prior to filing charges against Plaintiff for Second Degree Assault, Reckless Endangerment in the Second Degree, and Criminal Possession of a Controlled Substance in the Seventh Degree, Defendant Prior had: (1) Fantom's statement claiming that Plaintiff had thrown the knife which struck her, Prior Aff. at ¶¶ 25–29; (2) his personal observation (made after placing Plaintiff under arrest) that in the kitchen of apartment 32B there were several other knives similar to the one found in Fantom's arm, *id*. at ¶ 35; and (3) what later proved to be psilocybin mushrooms, a Schedule I controlled substance, found in Plaintiff's pockets at the PSC, *id*. at ¶¶ 40–43.

Additionally, prior to charging Plaintiff, Defendant Prior received a total of four sworn

statements, three from eyewitnesses and one from Plaintiff.[11]  In his sworn statement, eyewitness

Shane M. Merrit stated that:

> I was staying at 7 Birch Lane building 32F for the night with Colbi Fantom.  At around midnight a guy named Pat had been drinking.  Pat started fighting with his girlfriend and slamming the door.  Pat lives at 32B.  Me, Tyler, and Mike came down to see if he was hitting his girlfriend and he started getting violent and started running his mouth.  We were trying to talk him down but he wouldn't.  Pat then started picking up knives.  We all started running out the door and Pat started throwing knives. [Colbi] came downstairs because she heard a lot of noise and yelling.  Pat threw another knife and it hit [her] in the arm.  We then called 911 and Pat took off.

Prior Aff. at Ex. E.

Additionally, in his sworn statement, eyewitness Tyler M. Purchase stated, in pertinent part:

> At around 1:30 Pat Miller came up to my apartment to get a smoke from me and was talking about his girlfriend being a bitch.  He went down to his apartment starting arguing with Theresa. . . .  We heard a bunch of banging so me Christina, Shane Merritt, Mike Reynolds and Colby Phantom went downstairs knocked on the door, Pat opened up the door and threatened us with a knife and said that he was going to kick the shit out of us and kill us.  Then he went after Shane with a knife but missed him and Shane punched him.  Pat had his arm out the door trying to get Shane and then Shane kicked the door we all went to try to calm him down but Pat whipped a knife at us which stuck in the carpet so we started to defend ourselves and he picked up a handful of knives and started running at me and Shane but we left and slammed the door closed on our way out.  Pat then came out as we were trying to run upstairs, Pat then threw a knife at Colby first and that stuck right in her arm then he threw one at me and missed, that was the one you found outside.

*Id.* at Ex. F.

In her sworn statement, Plaintiff's girlfriend, Theresa M. Finch, stated, in pertinent part:

> AROUND 2:00 AM, PATRICK CAME INTO THE APARTMENT . . . WHILE HE WAS IN THE APARTMENT, SHANE, TYLER, AND MIKE BEGAN BANGING ON THE DOOR. . . . PAT AND I TOLD THEM TO LEAVE AND CLOSED THE DOOR.  THEN PAT WAS YELLING AND TELLING THEM TO GET AWAY FROM THE DOOR EVEN THOUGH THE DOOR WAS SHUT.  I WENT OUTSIDE AND TOLD TYLER, SHANE, MIKE, AND TWO GIRLS TO LEAVE.  I JUST FOUND OUT THAT ONE GIRL WAS THE GIRL THAT GOT THE

---

[11] Except for minor edits for clarity and brevity, the statements that follow are presented *verbatim*, without changes in grammar, punctuation, or spelling.

KNIFE THROUGH HER ARM, WHICH I BELIEVE IS SHANE'S GIRLFRIEND. HER NAME IS COLBY. . . . I WALKED BY MYSELF TO THE END OF THE SIDEWALK WHERE IT MEETS THE PARKING LOT. I HEARD SOMEONE KICKING MY APARTMENT DOOR SO I WALKED BACK TOWARD MY APARTMENT. I DID NOT SEE WHO WAS KICKING THE DOOR, BUT I KNOW TYLER, SHANE AND MIKE WERE IN FRONT OF MY DOOR. I HEARD SOMEONE SCREAM, "HE'S GOT A KNIFE!" I HEARD PAT SCREAMING, "GET AWAY FROM MY HOUSE!" I HEARD THEM CALLING PAT A PUSSY AND THEY WERE GOING TO BEAT HIS ASS. I TOLD THEM TO GET AWAY FROM THE DOOR AND GO UPSTAIRS. I TOLD THEM SOMEONE HAD CALLED THE COPS. THEN I CALLED 911 BECAUSE ALL OF A SUDDEN KNIVES WERE GETTING THROWN. I SAW MIKE RUN OUT OF MY APARTMENT AND RUN UPSTAIRS WITHOUT ANYTHING IN HIS HANDS. I SAW MIKE COME OUT OF TYLER'S APARTMENT WITH A KNIFE. TYLER AND SHANE WERE STANDING IN THE STAIR WELL WITH SOMETHING IN THEIR HANDS, BUT I DON'T KNOW WHAT THEY HAD IN THEIR HANDS. COLBY AND KRISTINA WERE SITTING ON THE STAIRS JUST UP FROM MY APARTMENT WHEN I SAW KNIVES GETTING THROWN FROM THE LOWER LEVEL NEAR MY APARTMENT. I BELIEVE PATRICK WAS STILL IN MY APARTMENT. I COULDN'T TELL WHO WAS THROWING THE KNIVES. . . . COLBY SCREAMED THAT SHE HAD A KNIFE IN HER ARM SO I RAN OVER TO HER. THEN I SCREAMED TO 911 BECAUSE SHE HAD A KNIFE IN HER ARM.

*Id.* at Ex. D.

In his sworn statement, Plaintiff stated, in pertinent part:

On Friday May 14, 2010 at or around 2:15 am I was in my Apt at Birch Lane Apt 32B. . . . my door got kicked in by Tyler and Shane. Theresa [Plaintiff's girlfriend] ran out past them somehow. I then grabbed a knife from the wooden block on my kitchen counter and threw it towards the open door. Then they ran and I slammed the door shut. I hid in the closet until the police came, because I thought they were going to attack me.

Prior Aff. at Ex. B.

The fact that Plaintiff's statements to police and the drugs found on his person were later suppressed as the fruit of an unconstitutional entry does not undermine our conclusion that Defendant Prior had probable cause to charge Plaintiff. *See Hinds v. City of New York*, 768 F. Supp. 2d at 514 n.1 (exclusionary rule has no effect in § 1983 claims). Likewise, neither Plaintiff's protestations that he was acting in self defense, nor Theresa Finch's Affidavit, undermine our

conclusion as to the fact that Defendant Prior had probable cause to charge Plaintiff. To begin with, "even where a plaintiff explains that he acted in self-defense, police officers are entitled to credit the allegations of a complaining victim in finding probable cause [to prosecute plaintiff], especially where that victim bears injuries." *Wieder v. City of New York*, 2013 WL 1810751, at *10 (E.D.N.Y. Apr. 29, 2013) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d at 128); *De Santis v. City of New York*, 2011 WL 4005331, at *7 (S.D.N.Y. Aug. 29, 2011) (citing *Panetta v. Crowley,* 460 F.3d 388, 396 (2d Cir. 2006), for the proposition that in the context of a malicious prosecution claim, "[s]tatements by the putative victim of the crime to police are ordinarily sufficient in themselves to establish probable cause, unless there is reason to doubt the victim's veracity.").

Moreover, "'probable cause to arrest is a defense to a malicious prosecution claim unless, after the arrest, additional facts come to light that vitiate the probable cause.'" *De Santis v. City of New York*, 2011 WL 400533, at * 8 (quoting *Smith v. City of New York,* 388 F. Supp. 2d 179, 186 (S.D.N.Y. 2005)). Setting aside Plaintiff's sworn statement for a moment, Plaintiff maintains that at the scene of the crime he asked officers to arrest a group of people who he claimed had attempted to burglarize his home. To the extent that Defendant Prior received a statement from Theresa Finch after the arrest but prior to filing charges, Prior Aff. at ¶¶ 53–54 & Ex. D, such statement cojoined with the Plaintiff's were not sufficiently exculpatory to eliminate probable cause. Indeed, in all of the sworn accounts, except Plaintiff's, witnesses claimed that Plaintiff continued to throw knives at the group after they had fled from apartment 32B; indeed, according to Finch, not only did Plaintiff continue to thrown knives after the alleged aggressors had fled Apartment 32B, Fantom was sitting on the stairs at the time she was struck by a knife. *Id*. at Ex. D. Thus, at the very least, Defendant Prior still had reasonable probable cause to believe that Plaintiff was not justified in

throwing a knife at Colbi Fantom, who was neither in Plaintiff's apartment nor in a position to threaten him at the time she was struck.

Moreover, Plaintiff was ultimately indicted by a grand jury on six counts, including two counts of Second Degree Assault. Georgiady Decl. at Ex. A. And, "under New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Nickey v. City of New York*, 2013 WL 5447510, at *7 (E.D.N.Y. Sept. 27, 2013) (internal quotation marks omitted) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 & 73 (2d Cir. 2003)). It is the Plaintiff's burden to establish the existence of fraud, perjury, suppression of evidence, or bad faith police conduct. *Id.* However, Plaintiff has not responded to Defendants' Motion, and a review of his submissions to date does not reveal any indication of fraud, perjury, the suppression of evidence, or any other police conduct undertaken in bad faith.

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's malicious prosecution claims against Defendant Prior.

### E. Qualified Immunity

Defendants contend that, even if the arrest and subsequent prosecution of Plaintiff were not justified by adequate probable cause, Defendant Prior is entitled to qualified immunity. Defs.' Mem. of Law at pp. 9–13. We agree.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

*-18-*

*Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).  Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).  Until recently, courts faced with qualified immunity defenses have applied the procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001).  That case set forth a two-pronged approach whereby the court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right.  If yes, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194 at 201-02.  Recently, however, the Supreme Court softened the rigid approach enunciated in *Saucier*.  *See Pearson v. Callahan*, 555 U.S. 223 (2009).  Now, the *Saucier* two-pronged test is not mandated in terms of the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial.  *Id*. at 818.

To determine whether a right was clearly established for purposes of qualified immunity, courts must consider "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his [or her] actions were unlawful." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *see also Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999).  The right to be free from false arrest and malicious prosecution are clearly established.  *See Perez v. Duran*, 962 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (citing *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995)).

A party is entitled to summary judgment on qualified immunity grounds if the court finds

that the rights asserted by the plaintiff were not clearly established, or that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citations omitted). In the context of police officers, a court should find that an officer has acted in an objectively unreasonable manner "when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* (citing *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995)). It follows then that "if a rational jury would find that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances," than that officer is entitled to summary judgment on the basis of qualified immunity. *Id.* (citations omitted).

Crucially, given the facts and circumstances known to Defendant Prior, both at the time of Plaintiff's arrest, and prior to issuing charges against Plaintiff, it is clear that he is entitled to qualified immunity. *See supra* Parts II.C & D. Even considering Plaintiff's protestations that he was innocent, and Theresa Finch's sworn statement, no rational juror could conclude that "no officer of reasonable competence could have made the same choice in similar circumstances." *See Lee v. Sandberg*, 136 F.3d at 107.

Accordingly, to the extent that the facts and circumstances known to Defendant Prior at the time of arrest or prior to charging Plaintiff were insufficient to establish actual probable cause, we recommend that Defendant's Motion be **GRANTED** as to these claims on the grounds that Defendant Prior had arguable probable cause for his actions. *Id.* at 102–03 (citations omitted).

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 43) be

**GRANTED** and that this case be **DISMISSED** ; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**</u>

<u>**PRECLUDE APPELLATE REVIEW.**</u>  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72 & 6(a).


Date:   August 7, 2014
        Albany, New York




Randolph F. Treece
U.S. Magistrate Judge